MEMORANDUM OF DECISION ON DEFENDANT, OTIS ELEVATOR’S, MOTION FOR SUMMARY JUDGMENT
WILSON, Judge.
I.
Plaintiff initiated this action in two counts seeking to recover damages for serious personal injuries he sustained in a fall off of an escalator at the Mohegan Sun Casino. The Casino is a gaming enterprise in the possession and control of the Defendant, Mohegan Tribal Gaming Authority (MTGA), an agency of the Mohegan Tribe of Indians of Connecticut, a federally recognized tribe. This court has jurisdiction pursuant to the Mohegan Torts Code, MTO 2001-07 and pursuant to the Constitution of the Mohegan Tribe.
The amended Complaint is in two counts. Count one is directed against the Defendant MTGA claiming negligence in the inspection, repair, and maintenance, etc., of the escalator. The allegations of the first count are not material to the instant Motion for Summary Judgment, filed by the Defendant Otis Elevator Company (Otis).
Count two, directed against the? Defendant Otis, alleges that on November 22, *534 2003 the said Defendant controlled the escalator in question when the Plaintiff, a patron at the Casino, while descending the escalator, was caused to fall off the escalator sustaining grievous injuries. Plaintiff alleges that his injuries were caused by the negligence of Otis in failing to inspect the escalator, failing to repair and/or maintain the escalator, failing to place warnings or barriers, failing to properly train its employees, or in permitting a defective condition to exist and failing to remedy the same.
Otis has denied the operative portions of the Complaint and has affirmatively alleged that the Plaintiff was himself comparatively negligent in failing to keep a proper lookout, failing to make reasonable and proper use of his senses, in riding down the escalator after climbing onto and sitting on its handrail, failing to hold the handrail and position his feet on the escalator step, and in using the escalator when his faculties were impaired by the use of intoxicating liquors and/or drugs. After the Plaintiff denied the allegations of the special defense, Otis moved for a summary judgment on the ground that there are no genuine issues of any material fact and that Otis is entitled to judgment as a matter of law. Specifically, the Defendant Otis argues that it did not breach any legal duty owed to the Plaintiff as alleged in the amended complaint, nor were the actions of Otis a proximate cause of the Plaintiffs injuries. The Plaintiff duly objected to Otis’s motion, briefs, affidavits, and other supporting documents were filed, and oral argument was had. For the reasons herein stated the Defendant Otis’s Motion for Summary Judgment is granted.
II.

APPLICABLE LAW

In deciding this case, this court is required to apply and enforce the substantive law of the Mohegan Tribe, which includes, inter alia, the law set forth in MTO 2001-07, the Mohegan Torts Code, and the statutory and common law of the State of Connecticut, MTO 96-4, Secs. 300 and 301.
MTO 2001-07, the Mohegan Torts Code, was adopted effective August 15, 2001, and is therefore applicable to this action. Sec. 2. The code applies to any and all tort claims arising on the Mohegan Reservation that may be brought against the MTGA by any patron such as the Plaintiff; Sec. 4C; and is the exclusive means of adjudication of such claims; Sec. 4D. Under Sec. 5A. 15., “negligence” means conduct that falls below the standard established by law or custom for the protection of others against unreasonable risk of injury or harm. The standard of conduct to which a person must conform to avoid being negligent is that of a reasonable person under similar circumstances. This is essentially the common law definition of negligence in Connecticut. Wright, Fitzgerald and Ankerman, Connecticut Law of Torts, Sec. 29 (3d ed.1991).
Negligence is a breach of a duty of due care owed by the Defendant to the Plaintiff which breach proximately caused an injury to the Plaintiff. The Defendant’s motion for summary judgment argues that there is no genuine issue of fact that the Defendant owed no duty to the Plaintiff: or, if there was such a duty, that the Defendant did not breach such duty, or cause the Plaintiff’s injuries. The Defendant also argues that the Plaintiffs own comparative negligence was the proximate! cause of the Plaintiffs injuries. The Plaintiff claims that there are factual issues.
Sec. 49 of the Gaming Disputes Court Rules of Civil Procedure provide for Summary Judgment:
*535 “b. Proceedings on Motion. A motion for summary judgment shall be supported by such documents as may be appropriate including affidavits, depositions, disclosures, written admissions and like documents which show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The adverse party shall file opposing affidavits or other documentary evidence as provided in this rule within the time set forth in § 15cl, setting forth specific facts showing that there is a material issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.”
“c. Form of Affidavits. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto ...”
“f. Judgment. Judgment shall be rendered forthwith if the pleadings and any other proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.”
1 n determining whether or not summary judgment should issue in this matter, the substantive law of Connecticut controls. MTO 95-4, Section 301 provides that the substantive law of the Mohegan Tribe for application by the Gaming Disputes Court shall be:
(a) The law as set forth in any Mohegan Tribal ordinance or regulations.
(b) The General Statutes of Connecticut except as they may be in conflict with Mohegan Tribal Law. And,
(c) The common law of the State of Connecticut, again except as such common law is in conflict with the Mohegan Tribal 'Law.
Specifically, when determining whether or not summary judgment should issue, if there are no conflicting Tribal laws or regulations, the Gaming Disputes Court looks to the Connecticut Practice Book, and Connecticut tort case law. See Wallace v. Mohegan Tribal Gaming Authority, No. GDTC-T03-120-FAM, — Am. Tribal Law -, 2004 WL 5660583 (2004) (Eagan, J.).
In Connecticut, “Summary judgment shall be rendered forthwith if the pleadings, affidavits or any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.” Conn. Prac. Bk § 17-49; Greenwich Hospital v. Gavin, 265 Conn. 511, 518, 829 A.2d 810 (2003). In a motion for summary judgment, the moving party “has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law ...” (citation omitted; internal quotation marks omitted.) Appleton v. Board of Education,, 254 Conn. 205, 209, 757 A.2d 1059 (2000). However, once that burden has been met, in Order for the motion for summary judgment to be denied the opposing party must showy through evidence, that a genuine issue of material fact exists. Id. “[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact.” (Internal quotation marks omitted,) Id. It is not enough for the opposing party merely to assert the existence of such an issue. Mere assertions of fact, are insufficient to assert the existence of an issue of material fact and therefore, cannot refute evidence properly *536 presented to the court in support of a motion for summary judgment. Miller v. United Technologies Corp., 233 Conn. 782, 745, 660 A.2d 810 (1995). “A material fact is a fact that will make a difference in the result of the case ... The facts at issue are those alleged in the pleadings.” Vaillancourt v. Latifi, 81 Conn.App. 541, 545, 840 A.2d 1209 (2004)(quoting Mountaindale Condo. Ass’n Inc. v. Zappone, 59 Conn.App. 311, 315, 757 A.2d 608 cert. denied 254 Conn. 947, 762 A.2d 903 (2000)).
Ill

FACTS AS SET FORTH IN THE AFFIDAVITS AND OTHER DOCUMENTARY EVIDENCE

A number of arguments were made by the parties in their briefs and oral arguments regarding the ultimate issue in deciding a motion for summary judgment, i.e., is there an issue of fact. In deciding this issue the court considers only those facts set forth in the affidavits and other documentary proof submitted by the parties. These may be summarized as follows:

A. Defendant’s Claims

The Defendant Otis submitted the following:
1. A deposition of the Plaintiff in which the Plaintiff acknowledged drinking alcoholic beverages prior to the accident. Plaintiff had no other recollection of this event.
2. Affidavit of David L. Steel, a former manager of Escalator Codes and Product Safety for the Defendant, and an experienced worker in the field of design, technical, and safety issues for escalators continuously since 1959. Mr. Steel attested that he viewed a video tape from a Casino camera which captured Plaintiffs fall. Steel asserted that
“Instead of riding the escalator properly, Mr. Murphy attempted to sit up and balance himself on the moving, right hand rail. As Mr. Murphy attempted to ride in this matter, he lost his balance and fell off the escalator.... At all times during Mr. Murphy’s incident, the escalator operated normally, and without any malfunction.”
Steel also asserted, inter alia:
a. that Otis is neither the owner of the escalator at issue, nor is it the owner of the property on which the escalator is located;
b. that Otis’ relationship to the escalator at issue is solely by virtue of a service contract with the MTGA which provides that Otis would perform certain specific maintenance services for the MTGA; specifically, to inspect, lubricate, adjust and, if conditions or usage warranted, repair or replace certain enumerated parts;
c. that Otis did not assume the duties of a property owner or possessor of land;
d. that Otis never agreed “to inspect, repair or maintain the escalator to ‘ensure that it was safe’ for use by patrons;”
e. that Otis never agreed to be responsible for placing warnings, signs or barriers;
f. that Otis does train its employees, in safety, maintenance and inspection procedures; but that Otis did not assume any duty directly to patrons to train its personnel in any specific manner;
g. that the cause of Plaintiffs fall was his attempt to sit and balance himself on a moving escalator hand rail;
*537 h. that there is “no known evidence” that Plaintiff s fall was related at all to Otis’s performance under its contract, the maintenance of the escalator, or the training of Otis’s employees;
i. that throughout “Mr. Murphy’s incident, and as demonstrated in the Surveillance Video tape, the escalator at issue was functioning completely normally and properly.”
3. A video of the accident, filmed by one of several surveillance video cameras operating throughout the Casino. (The Defendant’s characterization of the video is noted in the Steel affidavit. The Plaintiff submitted an affidavit in opposition, which will be summarized, infra, The court has viewed the video and this will be discussed hereafter.)
4. W.W. Backus Hospital Discharge Summary which reported that “The patient was also noted on his initial laboratory studies to have high alcohol level, over 240, and otherwise negative toxicology screen.”
5. Otis Maintenance Contract with “Mohegan Sun” which requires Otis to provide “a full preventive maintenance service intended to protect your investment, extend equipment life, and provide a high level of performance and reliability.” The (contract requires Otis to “maintain the units using trained personnel directly employed and supervised by us. The maintenance will include inspection, lubrication, (adjustment, and, if conditions or usage warrant, repair or replacement of the following parts:” (there follows a long list of (parts which seem to include ((to the court’s fin-expert eye)) anything and everything concerning escalators.)
The contract also includes provisions regarding safety tests and safety training.

B. Plaintiff’s Claims of Fact

The Plaintiffs claims of fact which he argues that there is a material issue for trial are sparse, and address only two of the issues raised by the Defendant, i.e., that the Plaintiff misused the escalator, and that the Defendant owed no duty to the Plaintiff. With regard to the former, the only affidavit submitted by the Plaintiff was his own. In it he attests that he has no “independent recollection of the incident.” He states that he viewed “the videotape and it does not show me jumping on the handrail, nor does it show me riding down the handrail.... It appears from the video tape that I was leaning against the handrail, which I believe is a permissible use of the escalator.” That is the extent of the documentary evidence submitted by the Plaintiff in opposition to the Motion for Summary Judgment.
In addition, the Plaintiffs counsel argues against the Defendant’s Steel affidavit, claiming that at trial Steel would be subject to cross examination and the Plaintiff would have the opportunity to provide additional testimony as to why he fell. This claim, however, begs the question. The Plaintiff is required to establish at this time that there is even an issue for trial. The Plaintiff also claims that the maintenance contract imposes a duty on the Defendant to exercise due care.
IY
The briefs, affidavits and documentary proof, and oral argument framed three broad areas for consideration whether the Defendant Otis is entitled to judgment as a matter of law: a) whether Otis owed a legal duty to the Plaintiff; b) whether, if there was such a duty, Otis breached such duty and thereby caused the Plaintiffs injuries; and c) whether comparative negligence, if any, on the Plaintiffs part debars him from recovery. Although not *538 alleged by the Plaintiff, or briefed by the parties, the court also considers: d) whether the doctrine of res ipsa loquitur (“the thing speaks for itself’) is of any avail to the Plaintiff in overcoming a motion for summary judgment.

A. Existence of Duly

Although the Defendant seemed to argue that the Defendant owed no duty of care to the Plaintiff, (and the Plaintiff in its opposition to the Defendant’s Motion assumed the Defendant to be making that argument) closer analysis shows that the Defendant was not making such a sweeping, and untenable claim. Rather, the Defendant claimed that its duties were limited by, and to, the terms of its contract with the MTGA. The court agrees. The Defendant did not owe to the Plaintiff the general duties of care owed by a possessor of land to invitees. Its duties are limited to those imposed by, or inferred from, the maintenance contract whieh did not impose any such duties.
The contract does require that the Defendant Otis inspect, repair, and/or maintain the escalator as described in the contract, and to train its employees properly. The court must thus determine whether there is any factual issue as to a breach of these duties.

B. Breach of Duty and Causation

Negligence is a breach of duty which the Defendant owes to the Plaintiff to exercise due care. The Defendant has proffered evidence that it did not breach any duty which it owed to the Plaintiff. Further the Defendant has argued that the escalator operated normally, properly, and without any malfunction, and that nothing concerning the Otis contract or the operation of the escalator caused the Plaintiffs fall.
Each allegation of negligence in the Plaintiff’s amended complaint will be considered:
“a. Failed to inspect the escalator to ensure that it was safe for use by patrons;”
“b. Failed to repair and/or maintain the escalator to ensure that it was safe for use by patrons;”
The court considers these two allegations together. The contract imposes on the Defendant a duty to inspect, repair and/or maintain the escalator. While neither the contract nor the law impose any duty on the Defendant “to ensure” the safety of the Plaintiff, the law does require the Defendant to exercise due care in the performance of its duties, that is, reasonable care. The Defendant claims that it did exercise such due care in performing these duties. Evidence of this is the Defendant’s expert opinion that at the time of the Plaintiffs fall, the escalator was operating normally, properly, and without malfunction. The coui't infers that such operation is evidence of due care in the inspection, maintenance and repair of the escalator. The documentary evidence submitted by the Defendant Otis supports this argument. The court viewed the video of the incident. It depicts the escalator operating normally before the Plaintiff stepped on, while he was on it, and while and after he fell off. At all times it appears to the court to be operating normally, properly, and without malfunction. No other patrons shown using the escalator had any problem with it. Indeed the Plaintiff is not shown to have any problem with the escalator. He stepped onto the escalator, moved over to the right side, descending normally, then appeared to turn his back to the right railing, lean back or lift a leg, lose his balance and fall off. No apparent action or movement of *539 the escalator, or of other patrons, accounts for the Plaintiffs fall.
“c. Failed to place any warnings, signs or barriers to prevent the Plaintiff from using the escalator;”
The Defendant Otis was not a possessor of land such that the law imposes a duty to exercise due care toward business invitees lawfully on the premises, such as the Plaintiff. Rather, the Defendant’s duties were those imposed by the contract. The contract imposed no duty to place “warnings, signs, or barriers.” No evidence was offered by the Plaintiff, nor any reasons advanced, why the Defendant had any duty whatsoever to “prevent the Plaintiff from using the escalator.”
“d. Failed to adequately and properly train its employees in safety, maintenance and inspection procedure of the escalators, ...”
The contract imposed such a duty on the Defendant and the evidence of the Defendant’s expert witness, Steel, is that the Defendant Otis performed this duty with due care. In the absence of any contrary evidence from the Plaintiff the court finds that there is no genuine issue of material fact as to this allegation.
“e. Permitted said condition to exist for such a period of time that Otis knew or should have known of the existence of the defective condition.”
The complaint does not allege any condition of the escalator antecedent to the alleged “said condition,” i.e., there was no aforesaid condition set forth. The allegation said condition is therefore meaningless and the subsequent allegation of “defective condition” begs the question. Thus, construed the complaint does not feven allege a defective condition. Further, the Plaintiff has not produced any evidence of any defect in the escalator.
The Plaintiff has not offered a-scintilla of evidence that the Defendant Otis tailed to inspect, repair or maintain the escalator or to train its personnel; nor has the Plaintiff offered any evidence, that there was any defect in the operation of the escalator, or that the escalator itself caused the Plaintiff to fall. The entire thrust of the Plaintiffs argument is that the Defendant had a duty to use due care, and that the Plaintiff was not comparatively negligent. The Plaintiff does not address at all the basic issue of negligence on the part of the Defendant, i.e., was there breach of the Defendant’s duty to the Plaintiff. The court finds that there is no genuine issue of material fact as to this question; that the Plaintiff has not raised an issue that Otis breached any legal duty to the Plaintiff or that any conduct by Otis was a proximate cause of the Plaintiffs fall. Otis is therefore entitled to summary judgment. Two other matters, however, remain.

C. The Question of Plaintiffs Comparative Negligence

The Defendant argued at some length in the Motion for Summary Judgment that the Plaintiff was comparatively negligent and caused his own injuries. The Plaintiff argues that this is a question of fact for a trial. The court having viewed the video, and reviewed the proceedings in the Motion for Summary Judgment, concludes that it does not reach this question. The question of the Plaintiffs comparative negligence arises only if the Defendant is negligent and if the Defendant’s negligence is a proximate cause of the Plaintiffs injuries. The Plaintiff in this case seems to argue that if there is a duty owed to the Plaintiff, and if there is a question of fact as to whether the Plaintiff was comparatively negligent, the motion for summary judgment should be denied. This argu *540 ment misses the decisive issue of the Defendant’s negligence in the first instance. Because the court concludes that there is no evidence of any negligence on the Defendant’s part, nor any defect in the escalator which could account for the Plaintiffs fall, the issue of the Plaintiffs conduct is moot.

I). Res Ipsa Loquitur

The parties did not brief the issue of res ipsa loquitur; however, at oral argument the question was raised whether the doctrine of res ipsa loquitur (“the thing speaks for itself.”) Black’s Law Dictionary, 1311 (7th Ed.1999) might supply any missing ingredient in the Plaintiffs opposition to the Defendant’s Motion. The Plaintiff has two such missing ingredients: lack of evidence of negligence and of any defect, i.e., proximate cause. The court holds that the doctrine cannot supply the latter, and does not, in this case, supply the former. “When certain types of harm occur under circumstances which from common experience strongly suggest negligence, and where the agency or instrumentality causing the harm is under the exclusive control of the Defendant, the doctrine of res ipsa loquitur is applicable.” Wright and Fitzgerald, Connecticut. Law of Torts, Sec. 41. There are three conditions that must be present before the doctrine is applied:
1. in the ordinary instance no injury would result unless from a careless construction, inspection, or user;
2. both inspection and user must have been at the time of the injury in the control of the Defendant;
3. the injury must have happened irrespective of any voluntary action at the time by the Plaintiff. Id.
“The doctrine of res ipsa loquitur in a rale of common sense, and not a rule of law which dispenses with proof of negligence ... The presence of the conditions necessary for the application of the doctrine does not shift the burden of proof to the Defendant or even compel an inference of negligence. It has no evidential force.” Holden and Daly, Evidence, Sec 54e. See also, Secs. 48, 64g.
The doctrine does not apply here because the “user” was not in the control of the Defendant: the Plaintiff was at least equally in control of the user. Even if it did apply, it only permits an inference of negligence which the court declines to draw here.
Finally, even if there were an inference of negligence, it would be negligence in the air: there was no defect in the operation of the escalator, and res ipsa loquitur does not permit any inference as to proximate cause. See Cesareo v. MTGA, 2 G.D.R. 55, 5 Am. Tribal Law 305, 2004 WL 5660107 (2004).

Conclusion

For all these reasons, the court concludes that the Defendant Otis has shown that there is no genuine issue as to any material fact bearing on the question of negligence or proximate cause, and that it is entitled to judgment as a matter of law. The Plaintiff has not filed any evidence setting forth specific facts showing that there is a material issue for trial. The Defendant Otis’ Motion for Summary Judgment is granted. Judgment may be entered accordingly.